UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

IN RE: ) Case No. 18-16460
) Chapter 7
)
DAVID M. LAZ )
)
)
Debtor ) Judge Janet S. ~~Baer~~

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
JUL 20 2018
JEFFREY P. ALLSTEADT, CLERK
INTAKE 1

## MEMORANDUM OF LAW IN SUPPORT OF DEBTOR'S RESPONSE TO MOVANT'S MOTION TO LIFT AUTOMATIC STAY AND OBJECTION TO THE CLAIM OF DEUTSCHE BANK AS TRUSTEE

NOW COMES the Debtor, David M. Laz and propounds this Memorandum of Law in support of Debtor's Response to Movant's Motion to Lift Automatic Stay and Objection to the Claim of Deutsche Bank as Trustee, and in support thereof states as follows:

### I. The Rooker-Feldman Doctrine Does Not Apply.

1. The initial threshold question here is whether this court has subject matter jurisdiction and can exercise concurrent jurisdiction with the Illinois court in this matter. Movant has filed a Mortgage Foreclosure Action against the Debtor in the Du Page County Circuit Court, Case No. 15 CH 1001. The present state of the case is that the court denied Debtor's Motion for Summary Judgment and granted Movant's Motion for Summary Judgment. There was no sale held and no confirmation of sale by the DuPage Court.

2. In the United States Court of Appeals, Seventh Circuit, in Truserv Corporation v. Fleges, Inc. (No. 04-3819, 2005) the court commented about the limited applicability of the Rooker-Feldman Doctrine.

> "However, a recent Supreme Court opinion discussed the scope of the doctrine and held that it has an extremely limited applicability: it applies only to "cases brought by state-

1

court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, --------, 125 S.Ct. 1517, 1521-22, 161 L.Ed.2d 454 (2005). The district court retains subject matter jurisdiction even if the claims brought in both cases are the same. See id. at 1526-27. "The district court retains subject matter jurisdiction even if the claims brought in both cases are the same. This Court has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. (quotations and citations omitted)" The Rooker-Feldman doctrine also acknowledges that state courts are just as capable of deciding federal claims as federal courts. Scholars often describe this concept as "parity" between state and federal courts.& Several Supreme Court cases-including Feldman itself-emphasize that state courts are fully competent to adjudicate cal prejudice or influence."). State courts also are fully competent to adjudicate federal claims. See *Atl. Coast Line R.R.*, 398 U.S. at 286. 178. Id. 179. See, *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) ("Rooker-Feldman... preserves a fundamental tenet in our system of federalism that... appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court." (citing *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997))); *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) ("Rooker-Feldman is one of a number of doctrines that safeguards our dual system of government from federal judicial erosion." (citing Atl. Coast Line R.R., 398 U.S. at 286)). 180.

3. However, there is one area in which the State Court have no concurrent jurisdiction and jurisdiction is exclusive to federal courts and this is regarding U.S. bankruptcy law. The U.S. bankruptcy courts are the only courts with subject matter jurisdiction over bankruptcy and the state courts lack such jurisdiction. Debtor has the right to have his claims adjudicated in the bankruptcy court.

4. The Seventh Circuit has held that Rooker-Feldman protects only final state court judgments. The Rooker-Feldman doctrine does not prevent federal district courts from exercising de facto appellate jurisdiction over state court interlocutory orders, nor does it protect state court judgments that are either subject to modification or appealable in state court.

2.

See TruServ *Corp. v. Flegles,* Inc., 419 F.3d 584, 591 (7th Cir. 2005); *Brown v. JPMorgan Chase Bank*, No. 2:07-CV-221 PS, 2008 WL 711721, at *3 (N.D. Ind. Mar. 13, 2008).

5. In Illinois a judgment in a mortgage foreclosure case is not considered final until an order for confirmation of sale has been entered in the case. It is well settled that a judgment ordering the foreclosure of mortgage is not final and appealable until the trial court enters an order approving the sale and directing the distribution. *In re Marriage of Verdung,* 126 Ill. 2d 542, 555-56 (1989); *Deutsche Bank National Trust Co. v. Snick,* 2011 IL App (3d) 100436; *GMB Financial Group, Inc. v. Marzano,* 385 Ill. App. 3d 978, 982 (2008). The reason such a judgment is not final and appealable is because it does not dispose of all issues between the parties and it does not terminate the litigation. *JP Morgan Chase Bank v. Fankhauser,* 383 Ill. App. 3d 254, 260 (2008); *Marion Metal &Roofing Co. v. Mark Twain Marine Industries, Inc.,* 114 Ill. App. 3d 33, 35 (1983). Accordingly, it is the order confirming the sale, rather than the judgment of foreclosure, that operates as the final and appealable order in a foreclosure case.

6. Therefore, since there is no final and appealable judgment in the DuPage case, this court can look on it as if it was never filed, since its existence does not affect this court's exclusive federal jurisdiction to apply the bankruptcy laws of the US.

### II The Movant Has No Standing to Appear before this Court because of The forged Allonge and the failure of the Plaintiff to become a holder pursuant to The terms of the Pooling Service Agreement and proof that the Allonge was attached to the note on the date possession of the note was transferred

7. In order to establish a colorable claim, a movant for relief from stay bears the burden of proof that it has standing to bring the motion. *In re Wilhelm,* 407 B.R. 392, 400

3

(Bankr.D.Idaho 2009). The issue of standing involves both "constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Constitutional standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to have a "case or controversy" to which the federal judicial power may extend under Article III. *Id.; see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir.2000).

2. In the case of *In re Maisel*, 378 B.R. 19 (Bankr. D. Mass. 2007) the court stated and found the following

> "Wells Fargo Bank filed a Motion for Relief from Stay: the exhibits attached to the Motion indicated that Option One Mortgage Corporation was the holder of the Note and Mortgage. Judge Rosenthal asked the Movant to "justify its position that it had standing to have brought the Motion." The Motion itself cited that the Movant was the current holder of the Note and Mortgage. What the Court said: "The plain language of section 362 of the Bankruptcy Code requires that one be a "party in interest" to seek relief from stay. 'On request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay...' 11 U.S.C. § 362(d). The test for whether one is party in interest in the First Circuit is whether a party has a colorable claim to the property. 'A party seeking relief from the automatic stay to exercise rights as to property must demonstrate at least a colorable claim to the property.' *In re Huggins*, 357 B.R. 180, 185 (Bankr. D. Mass. 2006) (citing *Grella v. Salem Five Cent. Sav. Bank*, 42 F.3d 26 (1st Cir. 1994)). In the case at bar, the Court cannot find from the evidence provided that the Movant had a colorable claim to the property at the time the Motion for Relief was filed. "Parties seeking relief from stay must be aware that by presenting a motion to the Court, they represent that 'the allegations and other factual contentions have evidentiary support...' Fed. R. Bankr. P. 9011(b)(3). The Movant was unable to provide evidentiary support for its allegations when called upon to do so. It is the claimant's burden to bring information regarding the relationships between the parties to the Court. *In re Parrish*, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005.

4

### A. Movant is not the Holder of the Note

8. In paragraph two of its Motion to Lift Stay the Movant alleges "The Debtor is indebted to Movant for which the Movant claims a valid security interest in the property commonly known as 2110 Babst Ct, Lisle, IL 60532";

9. In paragraph three of its Motion to Lift Stay Movant alleges that "This security interest arose from a Note and Mortgage, executed on 6/12/2006, in the amount of $484,500.00".

10. Movant has not alleged in its Motion to Lift Stay that it is the holder of the note. On this basis alone the Motion should be denied in that failing to make any allegations in the motion of any interest in the note makes the Motion fatally defective.

11. However, assuming that Movant had alleged that it is the legal holder of the note, the Movant in fact can never demonstrate that since the Allonge is a forgery.

12. In *John T. Brooks*, Debtor: Case No. 07-10611 (US Bankruptcy Court, Eastern District, PA) the court denied an Amended Motion to Lift the Automatic Stay on the basis of lack of proof of ownership interest in the property. The court stated,

> "The Amended Motion must be denied at this point because - due again to the many and great variety of pleadings and names on file - there is currently neither proof that the party who has a motion to lift the stay pending before the Court has an ownership interest in the Debtor's Property, nor is there a motion pending by Homecomings – the only party to have offered proof of an assignment of the Debtor's mortgage. A party who has neither suffered the injury directly nor has an assignment of a cause of action lacks standing. See, e.g., *Davis v. Yageo Corp.*, 481 F.3d 661, 677 (9th Cir. 2007); *Triple Tee Golf, Inc.* v. Nike, Inc., 2007 WL 4260489, (N.D. Tex. Aug. 10, 2007); *Solar Time Ltd. v. XL Specialty Ins. Co.*, 2004 WL 1683149, (June 15, 2004). Because "Litton Loan Servicing, LP as servicer for the Mortgagee of Record" (who filed the Amended Motion to Lift the Stay) neither owns nor clearly has an assignment of the Second Gelt Mortgage, it lacks standing to prosecute this Motion. The Amended Motion will therefore be denied. The proper owner of the Brooks mortgage is not precluded from bringing a motion to lift the automatic stay at a later date.'

13. In this case, the Movant is in the same boat. Attached to the documents filed by the Movant with the note and mortgage is an Allonge that normally would operate as a proper assignment of the note to Movant from the previous note holder. However, as attached to Debtor's Offer of Proof and Response to the Motion to Life the Automatic Stay as Exhibit "A" is the affidavit of one Nancy Montoya, who states under oath that the signature on the Allonge was not hers and that she never held the position of Secretary for the previous mortgage holder.

14. Movant attached the Note and Mortgage and what it alleges to be a valid Allonge to its Motion to Lift Stay. The note and mortgage were signed by the Defendant, showing that the payee was Accredited Home Lenders. The problem for the Movant however is with the Allonge. In order to fully meet the definition of being a holder, and therefore have a colorable interest, the Allonge, as being made payable to bearer, has to be a legitimate Allonge. As a matter of fact, it is not a legitimate Allonge and there not a proper assignment of the note, due to the forgery of the Allonge.

15. Furthermore, the mere physical possession of the note does not equate to proper physical delivery to qualify as a holder of the note. In the New York Case of *U.S. Bank Natl. Assn. v Steinberg*, 2013 NY Slip Op 52167 persuasively and clearly sets out this requirement. The court stated:

> In sum, a party has standing to foreclose under a "pay to the order" promissory note that was indorsed in blank — like the Steinberg Note at issue here — by evidencing that the note was negotiated by the indorser's physical delivery of the note to the foreclosing party. A party cannot prove prima facie standing to foreclose by claiming mere possession of a note, since UCC "holder" status and standing to foreclose is premised on negotiation by means of the lender's (or prior note holder's) indorsement and physical delivery of the negotiable instrument (see *Bank of NY Mellon v Deane*, 41 Misc 3d 494 [Sup Ct, Kings County 2013] [discussing application of the UCC and the foreclosing plaintiff's "misunderstanding of the general law of negotiable instruments in its equation of the status as holder' to mere possession of the instrument"]).

6

(a) Delivery Of The Steinberg Note

Plaintiff's reliance on the conclusory statement in the Labelle Moving Affidavit that plaintiff has had "continuous possession" of the Steinberg Note to establish the Morgan Stanley Mortgage Trust's standing is misplaced. Plaintiff's unverified complaint similarly alleges, in conclusory fashion, that "[p]laintiff is the holder of said note and mortgage [which] was indorsed by blank indorsement and delivered to [p]laintiff prior to commencement of this action" (emphasis added). Plaintiff's attempt to equate "possession" of the note with the UCC's requisite delivery is unavailing.

Plaintiff has failed to establish that it became a "holder" of the Steinberg Note, within the meaning of the UCC, by evidencing the physical delivery of the Steinberg Note from Hemisphere National Bank to the Morgan Stanley Mortgage Trust. The Labelle Moving Affidavit is patently insufficient to establish plaintiff's standing because it contains no specific factual details (i.e., when, who, what, where and how) evidencing Hemisphere National Bank's delivery of the Steinberg Note to the Morgan Stanley Mortgage Trust.

16. In this case, Movant has attached a copy of the note, which may demonstrate that Movant has physical possession of the note. It has not plead or established under the UCC that it is the holder of the note. Movant produced no evidence that, under the UCC, it obtained physical delivery of the note. As stated in *U.S. Bank Natl. Assn. v Steinberg,* it is incumbent upon the Movant to establish by factual details (i.e., when, who, what, where and how) evidencing delivery that it is the Holder of the note within the meaning of the UCC. With it being established that the Allonge is a forgery, Movant cannot show a colorable interest, standing or being a holder of the note.

17. Movant has the burden to prove legal capacity to sue if Debtor denies the legal capacity and Debtor does did indeed so deny such capacity. As stated in *Aurora Bank FSB v. Perry,* 2015 IL App (3d) 130673,

> "An allegation of capacity as the mortgagee in a foreclosure proceeding (735 ILCS 5/15-1208, 15-1504(a)(3)(N) (West 2010)) is a material fact (735 ILCS 5/15-1506(b) (West 2010)) and must be proved whether admitted or denied by the defendant (Wilson v.

7

Kinney, 14 Ill. 27, 28 (1852)). Having alleged capacity in its complaint, it is incumbent upon Aurora to prove capacity notwithstanding the Perrys' waiver of their right to argue standing or even their denial of Aurora's capacity to bring suit."

**B. Movant cannot be Holder of the Note pursuant to the terms of the PSA.**

18. The original lender is Accredited Home Lending and not Movant. Movant has sought to establish a colorable interest by attaching a copy of a mortgage note and the forged Allonge. The defective Allonge of the mortgage note are insufficient to convey a mortgage to a New York REMIC ("Real Estate Mortgage Investment Conduit") Trust such as Plaintiff under the terms of the Trust.

19. In this case Deutsche Bank is suing as Trustee for a specific Trust. Again, the Movant needs to show it has a colorable interest, standing and is the holder of the note. A trust is an artificial entity which can only do acts which it is legally and expressly permitted to do under the documents which create it and the law of the state which governs it. For example, 760 ILCS 5/3 which refers to trusts states that the instrument per se governs. In addition, the objective in this case was to create a trust to function as a conduit for mortgage backed securities which pass income to investors. In this case the documents which created the trust were filed with the SEC as Form 8-k pursuant to the Securities and Exchange Act of 1934. That document is available on Edgar. Edgar is the Electronic Data-Gathering, Analysis and Retrieval system which enables forwarding of submissions by companies and others which are required to file forms with the SEC. The database is free to the public on the internet. The following paragraphs will demonstrate in great detail according to the terms of the instrument which created the Trust, the Movant is not the legal holder of the Mortgage and Note.

8.

20. Section 2.01 of the Pooling and Servicing Agreement (PSA) creates the Trust as a New York common law trust. The relevant sections of the PSA are attached as Exhibit "B" to the Debtor's Response to Lift Stay and Offer of Proof. New York trust law and the PSA both govern the purchase of mortgage loans by the Trust. It was decided by the trustee that that fact issue should be decided by New York trust law. The beneficiaries of the trust may expect that upon purchase of the trust's certificates the trustee will use a uniform understanding of the trust's terms regardless of the forum. The Trust is created to exchange the Trust Fund for certificates purchased by investors. The assets which are conveyed under Section 2.01 of the PSA are Mortgage Loans.

21. As detailed below, the Trust does not own the Note and Mortgage because the transfer which was alleged in the Complaint did and could not have occurred per the terms creating the Trust (PSA) and New York trust law.

22. The Trust which is seeking to foreclose upon the mortgage in this case has in the PSA, which is its trust agreement, the time, manner and the method to fund the Trust with Mortgage Loans. The trust documents establish only one was to transfer assets to the Trust, which is in Section 2.01 of the PSA. A trust can only perform in accordance with its governing documents.

23. Section 2.01 of the PSA provides the Depositor, Morgan Stanley ABS Capital Iinc, for proper conveyance of mortgage loans "hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee....all the right, title and interest of the Depositor in and to the Trust Fund" in and to each identified Mortgage Loan. However, the Mortgage Note is not endorsed over to Morgan Stanley ABS Capital I Inc. There is no endorsement from Morgan

9.

Stanley ABS Capital I Inc. to the Trust. Instead there is fraudulent Allonge. There are also no intervening endorsements to the Depositor. There are also no provisions for direct deposit from the original lender, Accredited Home Lenders, to the trust. Therefore, the endorsement provided by the Movant, even if not forged, does not comply with the terms required by the PSA to transfer the Note into the Trust. Therefore, there was no effective conveyance of the Note to the Trust, and the Trust acquired no rights in the Note. *Sussman v. Sussman*, 61 A.D.2d 838 (N.Y. App. Div. 2d Dep't 1978).

24. Since there is no document transferring the Note into the Trust in accordance with its terms the Movant cannot be a holder of the note. Under New York law, the trustee under a corporate indenture... has his [or her] rights and duties defined, not by the fiduciary relationship, but only by the terms of the agreement. *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 2008 N.Y. Slip Op. 5766, 7 (N.Y. 2008). This is also the law in Illinois according to 760 ILCS 5/3. A trustee has only the authority which is granted by the instrument under which he holds. *Allison & Ver Valen Co. V. McNee*, 170 Misc. 144, 146 (N.Y. Sup. Ct. 1939). According to New York Estates Powers and Trust Law Section 7-2.1( c ) a trustee is authorized to acquire property "in the name of the trust as such name is designated in the instrument creating said trust property." For the conveyance of the property into the trust to be effective, the conveyance shall be done by the terms of the instrument which created the trust and the conveyance must designate the specific trust and beneficiary. Absent that, the assignment of the Mortgage Note is not valid. *Wells Fargo Bank, N.A. v. Farmer*, 2008 NY Slip Op 51133U, 6 (N.Y. Sup. Ct. 2008).

10.

25. According to New York law, there are four elements in a trust of personal property: (1) A designated trustee who must not be the beneficiary (2) a designated beneficiary (3) a fund or other property sufficiently designated to enable title to pass to the trustee; and (4) the delivery of the fund or property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee. *Brown v. Spohr,* 180 N.Y. 201, 209-210 (N.Y. 1904). There is not a trust until there is actually a valid delivery of the asset to at issue to the Trust. If the Trust does not acquire the property, there is no trust over that particular property which can be enforced. *Kermani v. Liberty Mut. Tns. Co.,* 4 A.D.2d 603 (N.App.Div. 3d Dep't 1957).

26. In this specific transaction and the lack of endorsement on the Note there was no effective transfer according to the terms of that Trust. New York's Estates Powers and Trust Law Section 7-2.4 states:

27. Section 7-2.4 Act of the trustee in contravention of the trust. If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.

28. Therefore the Trust never actually possessed the Mortgage Note per the required terms of the PSA.

29. Any assignment in after the closing date is late and not in compliance with the Trust terms governing documents. The cut-off date for the trust is November 1, 2006, and the closing date is November 28, 2006 Therefore, the Mortgage was not assigned to the Trustee until 2014, more than 8 years after the closing date of the Trust

11

30. According to the PSA, all mortgages were in fact transferred into the Trust in 2006 and the mortgages were transferred to the Trust by the Depositor. To be in compliance with the PSA and the Trust's REMIC tax status the subject mortgage should have been assigned to the trust in 2006 with all the assignments. Any assignment in 2008 or after would be inconsistent with the requirements of the PSA or the Trust's tax status regardless of who signed the assignment.

31. Any assignment to the Trust that is in fact inconsistent with the dates required for funding the Trust as set forth in the PSA would have extremely adverse tax consequences for the Trust. This is known as a pass-thru REMIC trust. The Internal Revenue Code states in 26 U.S.C. 860G(d)(1) that except as provided in Section 8600(d)(2), "if any amount is contributed to a REMIC after the startup day, there is hereby imposed a tax for the taxable year of the REMIC in which the contribution is received equal to 100 percent of the amount of such contribution." In Section 10.02 of the PSA it states the Trust and the Servicer are prohibited from any act which would adversely effect the Trust's REMIC status.

32.. Regarding the Note, not being dated itself and being fraudulent does not inform the Court that the transfer occurred within the time periods required by the PSA. See *In re Foreclosure Cases*, 2007 U.S. Dist. LEXIS 95673 (S.D. Ohio Dec. 27, 2007).

33. In *In Re Hayes,* 2008393 B.R. 259 (Bankr. D. Mass. 2008), the court denied Deutsche's Bank Motion for Relief of Stay and Sustained Debtor's Objections to the Claim. The court dealt with issues regarding the PSA of which Deutsche Bank was the Trustee. The court said,

> "The foregoing provisions of Massachusetts law do not assist Deutsche Bank or establish its standing to file the Motion for Relief from Stay which is now before the Court. In this case, Deutsche Bank filed its Motion for Relief from Stay, as Trustee of Argent Mortgage Securities, Inc. [sic], an entity which was not a party to the PSA. It failed to prove that the mortgage executed by the Debtor and her mother in favor of Argent Mortgage Company,

12

LLC was ever assigned to an entity by that name or to Argent Securities Inc., the Depositor under the PSA. The Confirmatory Corporation Assignment of Deed of Trust/Mortgage, dated April 16, 2008 (Exhibit 3), which was executed some seven months after the filing of the Motion for Relief from Stay, pursuant to which Argent Mortgage Company, LLC conveyed the mortgage on the Perkins Avenue property to Deutsche Bank was ineffective because Citi Residential Lending, Inc. lacked authority under the Limited Power or Attorney to assign the mortgage to Deutsche Bank on behalf of Argent Mortgage Company, LLC. Moreover, Deutsche Bank failed to submit any evidence that the November 3, 2004 mortgage was was ever assigned to an entity by that name or to Argent Securities Inc., the Depositor under the PSA. The Confirmatory Corporation Assignment of Deed of Trust/Mortgage, dated April 16, 2008 (Exhibit 3), which was executed some seven months after the filing of the Motion for Relief from Stay, pursuant to which Argent Mortgage Company, LLC conveyed the mortgage on the Perkins Avenue property to Deutsche Bank was ineffective because Citi Residential Lending, Inc. lacked authority under the Limited Power or Attorney to assign the mortgage to Deutsche Bank on behalf of Argent Mortgage Company, LLC. Moreover, Deutsche Bank failed to submit any evidence that the November 3, 2004 mortgage was included in the PSA or was subject to Section 2.09 of the PSA as neither Schedule 1 to the PSA nor a Mortgage Loan Schedule attached to a Subsequent Transfer Instrument were submitted into evidence. Thus, consistent with the holdings in In re Maisel, 378 B.R. at 22, and In re Parrish, 326 B.R. 708, 729 (Bankr. N.D. Ohio 2005), the Court finds that Deutsche Bank failed to adequately trace the loan from the original holder, Argent Mortgage Company, LLC, to it. "

### C. The Movant has failed to allege or prove that the Allonge was physically attached to the Note upon transfer from the original note holder.

34. Pursuant to (810 ILCS 5/3-204) (from Ch. 26, par. 3-204)

(a) .....For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

35. There are no allegations or proof provided by the Movant the Allonge was ever attached to the note. Without that, the Bankruptcy court has found this deprives Movant of standing and holder status.

13

36. Arizona law has the same verbiage in its UCC and the US Bankruptcy Court in Arizona in the case of In re Weisband No. 4:09-bk-05175, (US Bankruptcy Court, D. Az., 2010). In that case the Mortgagee filed A Motion to Lift the Automatic Stay and the court denied it. The court stated,

> "Under Arizona law, a holder is defined as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." A.R.S. § 47-1201(B)(21)(a).[3] GMAC has failed to demonstrate that it is the holder of the Note because, while it was in possession of the Note at the evidentiary hearing, it failed to demonstrate that the Note is properly payable to GMAC. A special endorsement to GMAC was admitted into evidence with the Note. However, for the Endorsement to constitute part of the Note, it must be on "a paper affixed to the instrument." A.R.S. § 47-3204; *see also In re Nash*, 49 B.R. 254, 261 (Bankr.D.Ariz.1985). Here, the evidence did not demonstrate that the Endorsement was affixed to the Note. The Endorsement is on a separate sheet of paper; there was no evidence that it was stapled or otherwise attached to the rest of the Note."

37. The court went on to say,

> "In this case, however, there is no proof that the allonge containing the special endorsement from GreenPoint to GMAC was executed at or near the time the Note was executed. Furthermore, the Endorsement does not have any identifying numbers on it, such as an account number or an escrow number, nor does it reference the Note in any way. There is simply no indication that the allonge was appropriately affixed to the Note, in contradiction with the mandates of A.R.S. § 47-3204. Thus, there is no basis in this case to depart from the general rule that an endorsement on an allonge must be affixed to the instrument to be valid.
>
> GMAC cannot overcome the problems with the unaffixed Endorsement by its physical possession of the Note because the Note was not endorsed in blank and, even if it was, the problem of the unaffixed endorsement would remain.[5] As a result, because
> GMAC failed to meet its burden of demonstrating that the Endorsement was proper, it has failed to demonstrate that it is the holder of the Note."

38. The same is true in this case.

14.

### III. The Movant has failed to attach the necessary documents to support its claim.

39. While the Motion to Lift the Stay attaches the Note, what purports to be an Allonge and a mortgage and mortgage assignment, the Movant has failed to attach any documentation as to proof of damages.

40. In the case of: *In re Edna Simmons and Bennie Simmons, Debtors*, NO. 05-52298, (US Bankruptcy Court, Middle Dist., Georgia) that court in its ruling stated,

> "Everhome seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), which provides: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" The burden of proof is on the party opposing a motion for stay relief, except as to equity in the property. Id. § 362(g). However, the movant must make an initial showing of cause for stay relief. *Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002). 4 In its motion, Everhome alleged, without any supporting documentation such as a payment history, Debtors were delinquent on 15 mortgage payments. The Court allowed Everhome to continue the hearing on its motion twice. After the first continuance, on June 12, 2008, Debtors' counsel provided Everhome's counsel with evidence of four payments, at least three of which had not been credited to Debtors' account. At the hearing on July 28, 2008, Everhome requested a third continuance to allow it time to trace the missing payments and to determine the exact amount of the arrearage owed by Debtors. During the six weeks between learning of the checks and requesting a third continuance, Everhome cannot show it took any steps to reconcile Debtors' account. Everhome's local counsel, Mr. Wilder, conceded he has neither evidence nor personal knowledge of any efforts by Everhome to trace the checks. He has not even spoken to Everhome about the payment discrepancies. In fact, Mr. Wilder turned to the Chapter 13 Trustee's records in an effort to recreate Debtors' payment history. Everhome wants stay relief but does not want to be bothered with offering any actual proof it is entitled to such relief. Producing an accurate, current payment history should be a simple matter for any company with a basic, competent record-keeping system. Furthermore, a company that wants to foreclose on property cannot expect permission to do so if it chooses to essentially ignore evidence that its records are wrong. Debtors in this case are perhaps fortunate that by virtue of their bankruptcy case, Everhome must answer to the Court before foreclosing. A debtor outside of bankruptcy who owes money to a creditor with sloppy or nonexistent records might be easily intimidated by the threat of foreclosure to pay money not owed. Everhome's failure to keep proper records or to remedy errors in its records is 5 inexcusable. Without accurate records, Everhome cannot make a showing of cause for stay relief based on a default in payments."

15

41. In this case there is no affidavits or proof of damages.

WHEREFORE, the Debtor respectfully requests that the court:

a) Deny the Movant's Motion for Relief from the Automatic Stay.

b) The court grant the Debtor's Objection to Movant's Claim.

c) For any further relief deemed just.

                                              Respectfully Submitted

                                              _____
                                              DAVID M. LAZ, Debtor

David M. Laz
Debtor
2110 Babst Ct.
Lisle, Il. 60532
(630) 689-6469

16